

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 14, 2016**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| THE TERRILL MANUFACTURING COMPANY, INC., | § § § | Case No.: 16-60105-RLJ-11 |
| | § | |
| Debtor. | § | |
| | § | |
| THE TERRILL MANUFACTURING COMPANY, INC. | § § § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 16-06002 |
| | § | |
| FIRST FINANCIAL BANK OF SAN ANGELO, | § § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

An emergency hearing was held on October 12, 2016, on the request of the debtor here,

The Terrill Manufacturing Company, Inc., for turnover of funds by First Financial Bank of San

1

Angelo (the Bank). The request was first made by Terrill Manufacturing by a *motion* for turnover, filed on October 3, 2016. Case No. 16-60105, Doc. No. 6. In conjunction with the motion, Terrill Manufacturing filed its request for an emergency hearing on the matter. Two days later, the Bank filed its procedural objection to the motion, noting, and correctly so, that a turnover request must be made by a formal adversary proceeding, initiated by a *complaint* filed in accordance with the rules applicable to adversary proceedings. Fed. R. Bankr. P. 7001(1). On October 6, 2016, Terrill Manufacturing filed such a complaint and thereby initiated this adversary proceeding and, among the causes asserted, requested turnover of funds by the Bank. Adversary No. 16-06002, Doc. No. 1.

The Court had set Terrill Manufacturing's request for expedited hearing on its October 6, San Angelo docket. It was then that the Court learned that, that day, Terrill Manufacturing had filed its complaint. On October 7, 2016, the Court issued an order denying Terrill Manufacturing's request (made at the docket call) for joinder of the motion for turnover with the adversary complaint, and set Terrill Manufacturing's request for turnover as made by its complaint for hearing on October 12, 2016, in San Angelo. Case No. 16-60105, Doc. No. 38. The order provided that the Court would consider Terrill Manufacturing's request for turnover "insofar as it addresses the following two questions: (1) whether the [B]ank must turnover property that is in its possession and that is unequivocally property of the bankruptcy estate; and (2) whether turnover is proper because the [B]ank by its actions violated the automatic stay." *Id*.

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(E).

**I.**

The urgent request for turnover, and indeed the bankruptcy itself, was caused by the

Bank's setoff of a deposit account that Terrill Manufacturing had at the Bank.  The Bank is Terrill Manufacturing's major secured creditor, holding a matured note that, prior to it effecting the setoff, had a balance of over $1.2 million.  The note came due in late April 2016, and was extended one time, to late June 2016.  Through a series of post-default offsets of Terrill Manufacturing's "Special Account" at the Bank, with the largest and most recent occurring on September 19, 2016, the Bank recovered over $600,000.  This, it appears, left Terrill Manufacturing without funds with which to continue operations.  It therefore filed this chapter 11 proceeding the next day, September 20, 2016.

Terrill Manufacturing is a "small company that designs, manufactures, and installs woodwork and custom finishing for the interior of commercial buildings."  Case No. 16-60105, Doc. No. 7 ¶ 3.  It presently has, as a subcontractor, several contracts with general contractors on large construction projects.  Given its financial plight, it has no ability to service these contracts.

Terrill Manufacturing wants the $600,000-plus in funds returned.  In addition, it has, assuming turnover of the funds, filed its emergency motion to use the funds as cash collateral for its operations.  This is also the Bank's concern, as its lien apparently covers Terrill Manufacturing's accounts receivable and proceeds of accounts receivable, which would constitute the very funds deposited in the so-called Special Account that were subject of the Bank's setoff.  Terrill Manufacturing contends that turnover is required because the Bank's actions in seizing and applying the funds were improper.  It argues, somewhat ambiguously, that the funds are property of the estate and that the Bank's actions in effecting the seizure of the funds within the 90 days of the bankruptcy filing violated the automatic stay of § 362 of the Bankruptcy Code.

## II.

Turnover does not apply here. First, the property that Terrill Manufacturing is seeking to have returned, i.e., the funds from the Special Account, is not estate property. They were seized and applied by the Bank before the bankruptcy was filed. The offset funds, and, specifically, any rights against the Bank for taking the funds, are not properly subject of a turnover request under § 542. *See In re Randolph Towers Coop., Inc.*, 458 B.R. 1, 3–4 (Bankr. D.C. 2011); *see also In re Calvin*, 329 B.R. 589, 596 (Bankr. S.D. Tex. 2005); and *In re Quisenberry*, 295 B.R. 855, 859 (Bankr. N.D. Tex. 2003). A bank account "consists of nothing more or less than a promise to pay, from the bank to the depositor." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 21 (1995) (citations omitted). Second, there is no evidence that the Bank committed a stay violation by its actions.

Counsel for another creditor that supported Terrill Manufacturing's request made the artful argument that the Bank failed to provide certain required notices concerning disposition of its collateral—i.e., the funds—and that such failure somehow turns the Bank's actions into a formal setoff governed by § 553(b) of the Bankruptcy Code. This provision allows for the trustee's (or debtor in possession's) recovery of a setoff to the extent it reduces the offsetting creditor's "insufficiency" in the 90 days prior to the bankruptcy filing. 11 U.S.C. § 553(b). The insufficiency, when viewed from the offsetting creditor's perspective, reflects the difference between its claim against the debtor (for the debt) and the debtor's claim against the creditor (as here, on the Bank's obligation to Terrill Manufacturing arising from the bank account). This is not just a novel argument. The purpose of § 553(b) is succinctly stated in *Collier on Bankruptcy*:

> If the debtor is experiencing financial difficulty and has defaulted on its obligation to the bank, the bank might be tempted to take a setoff at the moment the debtor's deposit balance is at its highest. However, such an offset might well plunge the debtor into financial ruin. The purpose of section 553(b) is to remove the bank's

4

temptation to take the setoff by providing for the recovery in bankruptcy of an amount equal to the value of the improvement in the bank's position.

5 *Collier on Bankruptcy* ¶ 553.09[2][a] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2016).  In response to this argument, the Bank submits that its actions constitute a repossession of its collateral effected by way of setoff, as it is a secured creditor that is secured by the proceeds that were placed in the Special Account.

The Court is not here ruling on the merits of a possible claim under § 553(b) or the Bank's response to such claim.  These are issues properly addressed by the pending adversary proceeding.  The Court will direct the Clerk of the Court to issue the Court's standard scheduling order on this adversary proceeding.

### III.

It is, therefore,

ORDERED that Terrill Manufacturing's request for turnover is denied.

### End of Memorandum Opinion and Order ###